Ruffin, C. J.
This is an action of assumpsit on two bills of exchange by the plaintiff asan endorser of Peebles, Hall & Co. against the acceptor. The bills were drawn on the 10th of July, 1841, by Peebles, Hall & Co., of Peters-burg in Virginia, in favor of F. E. Rives, on the defendant Sharp, of Danville, in Virginia, who accepted them, but failed to pay them when they fell due. The one was for $783 85 cts. at 90 days; and the other for $787 71 cts. at 4 months from date. Upon the failure of Sharp, the payee, Rives, returned the bills to the drawers, Peebles, Hall & Co., for payment; and they accordingly paid him and took up the bills. On the 10th of December, 1841, Peebles, Hall & Co. endorsed the bills to the present plaintiff, who resides in Caswell in this State, and immediately commenced this action by original attachment, levied on the estate of the defendant, situate in Caswell. The endorsement from Peebles, Hall & Co. to the plaintiff was without consideration, and was made for the pu rpose of enabling Price to take out an *419 attachment in his name for the benefit of Peebles, Hall Co.: and the present action was accordingly brought for their use. Upon the return of the attachment the defendant gave bail, and appeared and pleaded, 1st non-assumpsit, and 2dly, by ‘way of special plea in bar, the facts stated respecting the endorsement and tho purpose of it. .Upon the trial the facts were agreed upon as here stated, and upon them his Honor was of opinion for the plaintiff, and so instructed the jury, who found a verdict accordingly, and from the judgment the defendant appealed.
For the defendant it has been insisted that the plaintiff cannot maintain this action, commenced by original attachment, because it is not brought for his own benefit, but, in evasion and fraud of the act of 1777, for that of Peebles, Hall & Co., who could not have brought it in their owti names, according to the case off Broghill v Wellborn, 4 Dev. 511. Whether this objection be valid or not, if taken in apt time, it is not now necessary to say; for, if good, it comes too late. Undoubtedly the ho'der of a bill may endorse it to another in trust for himself, or to collect as his agent, and the endorsee may have an action against the acceptor of the bill. The" objection is not, therefore, that this plaintiff could not maintain assumpsit on these bills, biff that he cannot commence that action by attachment, but should have doiie it by capias. The imputed defect lies in the writ, and the answer is obvious, that, by accepting the declaration and pleading to it, the party waives all defects in the process. This point should have, been raised by a plea in abatement or in some other method before pleading in bar. But in the opinion of the court there is another objection to the plaintiff is recovery, which has more force. It is, that the bills could hot be put into circulation by the indorsement of Peebles, Hall & Co., after those persons had paid them to Hives. If Rivés’ name had been put on the bills, the case of Beck v Robley, 1 H. Blac. 89; is a direct authority against •this action. In that case a bill was drawn by Brown oil Robley, ’ payable to Hodgson or order. Hodgson put his name off the bill; aiid, not being' paid when' diie, Hodgson, without striking but- his blank endorsement, returned the bilí *420 to Brown, and he took it up, and afterwards passed it to Beck, who brought the action. It was held that when the bill came back unpaid, and was taken up from the payee by tj,e (jmwer) jt ceased to be a bill; for it could not then be negotiated by him without making Hodgson liable thereon, for.which there Ivas no colour. Between that case and the present there is but one point of difference; and that but increases the difficulties in the plaintiff’s way. Hodgson’s name was remaining .on the bill when he returned it to Brown; whereas it does not appear that Rives ever put his name on these bills, and it cannot be assumed that he did. But, waiving that for the present, the case cited is conclusive for the defendant, even if Rives’ endorsement were on the bills. The counsel for the plaintiff, however, opposes to that case the more recent one of Callow v Lawrence, 3 Maule & Selwyn, 95, and the language there used by Lord Ellenborough, “ That a bill of exchange is negotiable ad infinitum, until it has been paid by, dr discharged in behalf of, the acceptor; and that, if the drawer has paid the bill, it seems he may sue the acceptor on the bill, and if, instead of suing the acceptor, he put it into circulation upon his own .endorsement only, it does not prejudice any of the other parties, who may have endorsed the bill, that the holder should be at liberty to sue the acceptor.” But it seems to us, }ha,t neither the case itself; nor the doctrine here quoted, when correctly understood, shakes..the principle of Beck v Robley, but rather sustains it. No one can deny that a bill is negotiable indefinitely until payment, But the question is, by whom may it be negotiated? Why, by the payee or by any person entitled under his endorsement; and the acceptor will b.e as much bound to pay it to such endorsee, however remote, as he was to the payee himself, before he endorsed it. But it does not follow that the drawer of a bill, who takes it up, after dishonor, from the payee, is to be consider-éd the endorsee of the payee. Far from it; for, instead of claiming from the payee or under him, he was, in truth, liable on it to the payee, in default of the acceptor, and in discharge of that liability took it up. - Then, he could not look ÍP the payee to make the bill good to him; and, by conse *421 quence, he could not by his subsequent endorsement give to his endorser the right to such recourse against the payee. But as that would be the necessary effect of such endorsement, if allowed at all, it resulted that in such a case the law would not allow the drawer again to put the bills into circulation. That the payee suffered his name to remain on the bill, when he returned it, will not be an authority to the drawer to negotiate it; for it was not left there to give credit to the bill with the drawer, or, in other words, as an endorsement, but merely as a receipt for the amount paid by the drawer, animo solvendi. After such payment it would be unjust to the payee to allow the drawer to pass the bill on the responsibility of the former; and, therefore, he is not .permitted to pass it at all. With this reasoning, the passage quoted from Lord Ellenborough consists. In Callow v Lawrence, the bill was not, as here and in Beck v Robley, payable to a third .person, but was payable to the drawer’s order. After acceptance the drawer endorsed it, and it went through several hands, and was finally returned to the drawer by a holder, who struck out all endorsements after that of the drawer, and received payment from him, and then the drawer passed the bill to Callow; and it was held that the latter might maintain his action against the acceptor. A bill payable to the drawer’s order, when accepted, becomes substantially a promissory note from the acceptor to the drawer, being an express promise to pay the drawer or his assigns. When it comes back to the drawer, he is remitted to his original rights upon an instrument payable to himself, and may sue on it, without noticing endorsements that had been made of it. Doak v Caswell, 1 Hay. 18. Strong v Spear, 1 Hay. 214. Callow v Lawrence, 3 M. & S. 95. It would seem to follow .necessarily, that the drawer might again endorse it; for, in so doing, he passes the instrument regularly according to its face, and leaves no one liable to his endorsee but himself and the acceptor, each of whom ought thus to be liable. Gomez Serra v Berkeley, 1 Wils. 46, and Guild v Eager, 1 Mass. Rep. 615. Upon this distinction between bills payable to a third person, on the one hand, and a promissory note or bill payable to the drawer’s *422 or(jerj on the other, are obviously founded the observations of Lord Ellekborough, in the case cited. He admits the authority of Beck v Robley, and carefully confines his rule to ^ case tken before that is to say, of a bill payable to the drawer’s order, by saying, “that if, instead of suing the acceptor, he (the drawer) put the bill into circulation upon his ovm endorsement only, the holder might sue the acceptor;” which can apply to no case but that of a bill payable to the drawer’s order or to a promissory note. Then he immediately proceeds to declare further, that “the case would be different, if the circulation of the bill would have the effect of prejudicing any of the endorsers,” as in Beck v Robley, was the case. The other judges place the matter in a still clearer light. LeBlanc 3. said “there was in Beck v Robley no color to charge Hodgson, and, striking out Hodgson’s endorsement, the bill could not possibly be negotiable.” And Bagley j., who is high authority upon a point of this kind, states the distinction very shortly and happily by saying that “ in Beck v Robley payment by Brown struck out the endorsement of Hodgson, whereas the payment by Pywell (the drawer in Callow v Lawrence) did not, in legal effect, strike out Pywell’s own endorsement, so as to render the bill no longer negotiable.” Thus those two cases stand well together. The principle of Beck v Robley is that which governs this case, and is, that a person cannot negotiate paper, when, by so doing, he would render responsible oh it another person, from whom he had taken it up, under a prior responsibility. While the principle of Callow v Lawrence is, that a person, who takes up paper, once due to himself, may again put it into circulation, provided that, in so doing, he exposes no person to a prejudice but himself or those who are legally and justly liable on the paper before him.
In considering the'case hitherto, it has been treated'as if Rives had put his name on the bills; in which case, even, we have seen that the law is against the plaintiff. Bu.t that fact is otherwise here; or, at least, does not appear, which is the same thing. In Beck v Robley, the plaintiff no doubt, did sue as the endorsee of Hodgson, the payee; so that he had *423 apparently a regular title to the bill. But this plaintiff de dares, not as the endorsee of Rives, but upon the endorsement of Peebles, Hall & Co.; which is certainly bad. No person can acquire a title to a bill, payable to the order of Rives, but by the order of Rives. When he gave it back to Peebles, Hall & Co. without his endorsement, it was dead to all intents and purposes, as a negotiable instrument. In the words of Mr. Justice Le Blanc, “striking out the payee’s endorsement, the bill could not possibly be negotiated.”
The endorsement to the plaintiff was a nullity, and he cannot maintain any action on the bills.
Per Curiam, New trial awarded.