This action was brought to recover the sum of $3,663.90, alleged *Page 187 
to be due by account stated. An attachment was issued and levied upon certain personal property of the defendant, an itemized list of which was annexed by the sheriff to his return. The attachment was afterwards ordered by Devin, J., to be set aside (176) at the request of J. F. Parker, receiver, in order that the operations of the Garland Lumber Company could be resumed, under its contract with defendant, and it was further ordered that "the latter" keep in his possession at least 400,000 feet of lumber pending the further hearing of this cause on the return day thereof, "which lumber shall be subject to any liens which the plaintiff may legally assert against the same."
The plaintiff alleged on affidavit that McBryde was disposing of the lumber, or had already disposed of it, in disobedience of the former order of the court, whereupon Guion, J., ordered that defendant show cause why he should not be attached for contempt, and afterwards discharged the rule upon the defendant's filing a sufficient bond in the sum of $5,000, which should stand in the place of the lumber ordered to be held by the defendant for the purpose mentioned in the former order, and "shall be conditioned to pay any such lien judgment as plaintiff may recover against defendant herein."
The court appointed a referee to take and state the account. He made his report, which was set aside so that defendant might introduce further evidence, the notice to him of the hearing of the referee having been deficient. Thereupon Mr. Richard L. Herring was appointed referee for the same purpose, and he filed the following second and final report, as it is termed in the case: To the Superior Court of Sampson County:
The undersigned, Richard L. Herring, referee, appointed in this cause by order of his Honor Guion, J., having formerly made a report 29 January, 1921, and said cause having been referred to said referee by order of Bond, J., at March Term, 1921, of the Superior Court of Sampson County, begs to report as follows:
On 5 April, 1921, at 12 o'clock noon, in the law office of Grady 
Graham, Clinton, N.C. the plaintiff being absent in person, but represented by counsel, Henry A. Grady, and the defendant being present in person and also represented by counsel, Messrs. Q. K. Nimocks and E. S. Smith, the defendant proceeded to offer his evidence, which is contained in the typewritten report thereof herewith sent to the court, the plaintiff having heretofore by consent, at a former meeting, offered in evidence the same testimony that was offered before J. Abner Barker, referee, which appears in the file; and upon all the evidence, pleadings, exhibits, and admissions of that parties, the referee makes the following findings of fact, it being *Page 188 
agreed by all parties that this report should be heard and passed upon at May Term, 1921, all parties waiving time:
First. That heretofore, prior to 1 January, 1915, the (177) Plaintiff and the defendant were engaged in the mercantile business at Garland, N.C. under the firm name and style of South River Supply Company; and on said 1 January, 1915, the defendant, D. L. McBryde, conveyed to the plaintiff, W. Reid Martin, all of his right, title and interest in and to said mercantile business, by written conveyance, filed with the referee and marked Exhibit "E."
The referee finds that said paper-writing was intended as a chattel mortgage, made for the purpose of securing the plaintiff for certain moneys advanced by him in the conduct of said business.
Second. That during the conduct of the business the said D. L. McBryde was operating a large sawmill and lumber plant near the town of Garland, which was not connected with the South River Supply Company; that he employed a number of hands and made settlement with said hands with metal pay checks, which were cashed at the store of the plaintiff at par; that it was understood and agreed between the plaintiff and the defendant that said pay checks should be received at the store of the plaintiff as cash, with the further understanding and agreement that the plaintiff should hold said checks in the manner, and that the same should be collectible upon the same basis as if held by the original parties from whom they were purchased by the plaintiff, and in furtherance of this agreement the defendant executed a certain paper-writing in words and figures as follows:
1 APRIL, 1914. W. REID MARTIN, Proprietor, South River Supply Company, Garland, N.C.
DEAR SIR: — I hereby authorize you to handle and accept metal pay checks that I issue to my laborers in exchange for their work, the same to be due and payable to you on my regular pay days, the same as if held by said laborers, and I hereby agree that all accounts and holdings of same due and collectible on the same basis as if held by the original parties to whom the checks are paid.
 Yours respectfully, D. L. McBRYDE.
Third. That during the course of business the plaintiff purchased from the laborers of the defendant, under the agreement referred to in the second finding of fact, metal pay checks amounting in value to $5,404.05. *Page 189 
Fourth. That this action was commenced 13 October, 1916, and thereafter, on 17 October, 1916, J. F. Parker, receiver (178) of the Commonwealth Land and Timber Company, came into court and made himself a party to this action, and upon affidavits filed by the said J. F. Parker and others, an order was entered by Devin, J., at Kinston, N.C. dissolving the warrant of attachment which appears in the file and providing as follows:
"And it is further ordered that the said D. L. McBryde proceed to resume operations under his said contract, as though said attachment had not been issued or served, and that he keep in his possession at least 400,000 feet of lumber pending the further hearing of this cause on the return day thereof, which lumber shall be subject to any liens which the plaintiff may legally assert against the same."
Fifth. That thereafter, on or about 9 January, 1919, a petition was filed in this cause, alleging that all of said lumber had been disposed of, in violation of the order entered by Devin, J., hereinbefore referred to, and thereupon his Honor, Guion, J., issued an order requiring the defendant to appear before him at the courthouse in Clinton, N.C. on Saturday, 8 February, 1919, and show cause why he should not be punished for disobeying the former orders made in this cause; and thereafter at the hearing of said motion said writ was vacated upon condition that the defendant file a good and sufficient bond in the sum of $5,000, payable to the plaintiff, which bond was filed by the defendant with W. L. Williams, Jr., B. F. McBryde, and E. S. Smith as sureties thereto, and contains the following provision:
"The condition of this obligation is such that whereas the plaintiff has sued the defendant herein for a certain alleged indebtedness amounting to $3,663.90, and claims a lien on certain lumber, as appears by the pleadings and papers herein: Now, therefore, if the plaintiff shall recover judgment against the defendant herein and shall be adjudged entitled to a lien on said lumber as security for the payment of said judgment, or any part thereof not exceeding the amount sued for, and if the defendant shall pay such judgment as the court may find and adjudge subject to such lien, then this obligation to be null and void, otherwise to be and remain in full force and effect."
Sixth. That at the time of the institution of this action D. L. McBryde was indebted to the South River Supply Company, on account of metal pay checks taken under the written contract hereinbefore referred to in the sum of $5,404.05, and in addition thereto *Page 190 
was personally indebted to said company for goods sold to him individually in the sum of $527.03, so that on 1 January, 1917, the
Cash in bank ................................ $ 19.63 (179) Merchandise on hand ......................... 318.21 Open accounts ............................... 28.81 Personal account D. L. McBryde .................. 527.03 Metal pay checks account ........................ 5,404.05 --------- Total ....................................... $ 6,297.73
Seventh. That at the time above referred to, 1 January, 1917, the South River Supply Company was indebted to plaintiff Martin in the sum of $1,754.46 for money loaned to said company from time to time.
That the plaintiff has received from the cash in bank, merchandise on hand and open accounts, the sum of $366.65, which should be charged against him and deducted from his one-half interest in the business, so that the account between the two copartners should be stated as follows:
 Total assets of the company .......................... $6,297.73 Account due Martin for money advanced to company ........................................ 1,174.46 --------- Net worth of business ............................ $4,543.27 Of this Martin is entitled to one-half ............... 2,276.68.5 Of this McBryde is entitled to one-half .............. 2,276.68.5 --------- Total .............................................. $4,543.27 Amount due Martin, one-half of business .............. 2,276.68.5 Less amount received from accounts and cash in bank ....................................... 366.65 Balance .......................................... $1,910.03.5 Amount due Martin, one-half business ................. 2,276.68.5 Amount due Martin for money advanced business ........ 1,754.46 --------- Total amount due Martin .......................... $3,664.49.5
Eighth. That at the time of the institution of this action the defendant McBryde was in serious financial difficulties, there being many recorded judgments against him; that he was in fear of executions being issued on said judgments and his property seized by his creditors; that he was shipping lumber from Garland, N.C. to J. S. Kent Co., of Philadelphia, Pa., as fast as the railroad facilities would permit, which had the effect of removing the property beyond the (180) reach of the court and of hindering, delaying and *Page 191 
defeating his creditors from collecting the amounts due them, and such was his intention.
Ninth. That the order requiring the defendant to keep in his possession at Garland, N.C. the 400,000 feet of lumber hereinbefore referred to, was consented to by all of the defendants to this action, and was made at the suggestion of defendant, J. F. Parker, receiver, and he is bound thereby.
Upon the foregoing findings of fact the referee makes the following conclusions of law:
1. That by reason of the written contract entered into between the defendant and South River Supply Company, he thereby created a valid lien upon the lumber, etc., cut at his mill, and subrogated the said South River Supply Company to any rights of lien that might have been asserted by his employees, to whom the metal pay checks were given, and to all other remedies that said employees might have asserted.
2. That by reason of the fact that the defendant McBryde, at the time this action was instituted, was financially embarrassed, and was shipping his assets beyond the State, etc., as found in finding of fact No. 8, the issuance of the writ of attachment herein was provident and proper, and the plaintiff thereby secured and was entitled to a valid lien upon all of the property seized by the sheriff, consisting of the 400,000 feet of sawed lumber described in the return of said sheriff.
3. That by reason of the fact that the amount due the South River Supply Company by D. L. McBryde on account of metal pay checks is in excess of the total amount due the plaintiff Martin, the plaintiff is entitled to assert the amount of his recovery as a lien against said 400,000 feet of lumber, and require the defendant McBryde to accept his open account as a credit on his one-half in the business.
4. That all of the defendants are bound by the order entered herein, requiring the defendant to keep 400,000 feet of lumber on hand to pay any judgment that may be recovered in this action by the plaintiff, which is adjudged to be a lien on the lumber seized by the sheriff, and by reason of the fact that the $5,000 bond filed herein was substituted in lieu of said lumber, that the defendant and the sureties on said bond are liable for the amount of the recovery adjudged in this action.
5. That the plaintiff Martin is entitled to recover of the defendant McBryde, as principal, and B. F. McBryde, E. S. Smith, and W. L. Williams, Jr., sureties, the sum of $5,000, the penalty of the bond filed herein, to be discharged upon payment to the *Page 192 
plaintiff, W. Reid Martin, of the sum of $3,664.50 with interest thereon from 1 January, 1917, together with the costs of this action to be taxed by the clerk.
The date above named, 1 January, 1917, is an arbitrary (181) date fixed by the referee, on account of the fact that the business was in process of being wound up at that time, said date being subsequent to the issuance of summons herein.
All of which is respectfully submitted this 23 April, 1921.
RICHARD L. HERRING, Referee.
The defendant filed nine exceptions to this report, each of which was based upon the following ground: "The defendant excepts to the findings of fact in the referee's report, for that it is contrary to the evidence taken in the case"; and he also filed five exceptions to said report, each of which was based upon the following ground: "The defendant excepts to the conclusions of law found in another article of the report, for that the same is not a correct conclusion of law based upon the evidence taken in the above cause, and that said conclusion of law was based upon erroneous finding of fact." The above exceptions to findings of fact and those to conclusions of law were, therefore, all alike in form and substance.
The defendant further excepted to said report because the referee failed to nonsuit the plaintiff at the conclusion of the plaintiff's evidence and again at the close of all the evidence. Bond, J., approved and confirmed the report of Referee Herring in all respects, and rendered judgment against defendant for the sum of $3,663.90 and costs, to include referee's fee of $50, and premium on attachment bond.
Defendant appealed and assigned the following errors:
"1. To the referee's denial of defendant's motion for nonsuit.
"2. To referee's denial of defendant's motion to vacate the attachment.
"3. To referee's denial of defendant's motion at the close of all evidence for nonsuit.
"4. To referee's denial of defendant's motion at the close of all evidence to vacate the attachment.
"5. To the refusal of the presiding judge to sustain the defendant's exceptions to the referee's findings of fact and conclusions of law, as more fully set out in the record.
"6. To the refusal of the presiding judge to allow defendant's motion of nonsuit and to vacate the attachment made before the referee, as above stated and renewed before the presiding judge at the hearing before him on exceptions to referee's report.
"7. To the judgment as signed, as appears of record." *Page 193 
After stating the case: It is useless to consider the exceptions filed to the referee's report as to the (182) facts, further than to say that the judge afterwards reviewed the evidence and findings of fact by the referee, and approved and confirmed the same, adopting them as his own. We have repeatedly held that, where this is the case, we will not review the judge's final decision in this respect, where there is evidence to support the findings. Dorsey v. Mining Co., 177 N.C. 60, at p. 62;Maxwell v. Bank, 175 N.C. 180; Southern Spruce Co. v. Hayes,169 N.C. 254, where this Court held: "As said in another case, McCullersv. Cheatham, 163 N.C. 63: `The misfortune of the defendants (the plaintiff in the case at bar) in this case is that the referee has found all the essential facts against them, and when these findings were reviewed and approved by the judge, upon consideration of the report and exceptions, there being evidence to warrant them, we are precluded from changing the report in this respect, but must decide the case upon the findings of fact as made by the referee and approved by the court. . . . We will not review the referee's findings of fact, which are settled, upon a consideration of the evidence, and approved by the judge, when exceptions are filed thereto, if there is some evidence to support them.'" Turning to McCullers v.Cheatham, supra, we find that the following cases are cited there:Boyle v. Stallings, 140 N.C. 524; Harris v. Smith, 144 N.C. 439, and cases cited: Thornton v. McNeely, ib., 622; Frey v. Lumber Co.,ib., 759; Thompson v. Smith, 160 N.C. 256. There was some evidence in this case to support the rulings of the referee and judge as to the facts.
Now as to the exceptions taken to the referee's conclusions of law. One ground of these exceptions is that they are not correct conclusions based upon the evidence. The conclusions of law are not based upon the evidence, but upon the facts found by the referee; and the other ground, that the conclusions of law were based upon an erroneous finding of fact, is but saying that the facts were erroneously found by the referee and judge, which we have shown is a matter not reviewable in this Court.
When the assignments of error are considered, they really present but two questions: First, was it error in the court to refuse the motion to nonsuit; and, second, should the referee and judge have vacated the attachment? There may be a third question, which we also will consider, though it is not definitely and sufficiently raised by *Page 194 
the defendant in his exceptions and assignments of error, and that is, could the plaintiff sue the defendant, the latter being his partner? as defendant alleges and, we think, erroneously.
1. The court did not err in refusing a nonsuit. This (183) really involves the two questions as to the right of plaintiff to sue the defendant, and the attachment.
It is contended that the plaintiff could not sue the defendant, because they were partners and one can sue the other only for a settlement of the partnership affairs. But this, if correct generally, is not so with reference to the particular facts of this case. Here the plaintiff alleges his right to recover damages because he had, upon defendant's request, furnished to him "goods, wares and merchandise and feed supplies in order that McBryde could carry on the business in which he was then engaged, it being the operation of a lumber and mill plant." This is in no way connected with any partnership affair, but entirely separate therefrom, if any partnership existed, and altogether independent thereof. The following is settled, according to George on Partnership, 314(131):
"A partner may maintain an action at law against his copartner upon a claim due to the one from the other as individuals. The following classes of cases fall within the above rule:
"(a) Claims not connected with the partnership.
"(b) Claims for an agreed final balance.
"(c) Claims upon express personal contracts between partners."
And Ruling Case Law, vol. 20, p. 926, says: "The general rule prohibiting the bringing of suits by one partner against another until a balance is struck does not apply to all possible cases which might appear to be within its scope. The limitation may be removed by statute or agreement between the parties. Thus one partner may sue another at law on a promissory note executed by the partnership to him, where there is a statute providing that all contracts which by the common law are joint shall be construed as joint and several, and that in all cases of joint obligations of copartners and others, suits may be prosecuted against any one or more of them who are liable." The general rule, therefore, even as between partners, is not inexorable, but has its exceptions. The case ofOwen v. Meroney, 136 N.C. 475 (opinion by the Chief Justice), as reported in 1 A. E. Anno. Cases 834, is an apposite one. The substance of it, as stated in the headnote to 1 A. E. Anno. Cases, supra, is as follows: "An action may be maintained by one partner against another to recover damages for the failure of the latter to comply with an agreement made by him as a condition precedent to the formation of the partnership." There is a valuable note to that case at *Page 195 
pp. 835, 836, in which, among other things, it is said: "Thus, an action will lie for a breach of promise to furnish money or property for carrying on the partnership. A partner may recover the damages suffered by him personally, unless ascertainment of such damages involves an examination of the partnership accounts, (184) when the only remedy is in equity." The note is amply supported by the citation of relevant authorities. And inNewby v. Harrell, 99 N.C. 149, this Court held: "While the general rule is that one partner cannot maintain and action against his copartner to recover money which might have been taken into account of the partnership, until after a settlement, he may sue before such settlement to recover for the wrongful conversion or destruction of the joint property, or for the loss or destruction of his individual property used in the business, resulting from the negligent use by the other partner."
If the plaintiff, who happens to be a partner, can recover on a promissory note given by the firm to him individually, or for damages suffered by him in the same way, and resulting from a breach of contract, or a tort, there is no conceivable reason why he cannot recover here for the sale of goods, wares and merchandise sold or supplied to defendant, even if the two were partners in the supply business (which is denied), because the goods were furnished to defendant personally for the express purpose of enabling him to supply his hands who were operating his mill plant, with which the plaintiff had no connection, except as bookkeeper. The debt due the plaintiff was, in no sense, an item in any partnership account, and the case in no view falls within the principle invoked by the defendant.
Now as to the lien of plaintiff, under the contract with the defendant set forth in the case. The judge did not discharge the attachment on the merits, but he was evidently proceeding, or at least in analogy to the proceeding for a discharge, as authorized by the statute (Pell's Revisal, vol. 1, secs. 774 and 775), and the bond required by the judge, and given by the defendant in place of the 400,000 feet of lumber, was so conditioned as to require the defendant "to pay any such judgment in the action as plaintiff may recover against him therein," in addition to the bond being held to secure any lien which plaintiff had on the lumber, for which the bond was a substitute, the object of all this being to release the property attached so that defendant or the receiver could use it in the prosecution of the business. It would be a clear perversion of the true intent and purpose for which the bond was allowed to be filed, as an accommodation to the defendant so that he might use the property attached or the lumber held in lieu of it, if we should hold *Page 196 
otherwise. We must decide according to the letter and spirit of the transaction, and not let the defendant take advantage of his own repudiation of his agreement, upon the faith of which he, or the receiver, secured the release of the attached property and afterwards of the lumber, so that the work of the mill might proceed.
The referee, in his admirable report upon the facts and (185) the law, has found as a fact that the defendant being involved in serious financial difficulties, and being much embarrassed, there being many recorded judgments against him, and while he was in fear of executions being issued against his property, was shipping lumber from Garland, N.C. to points outside the State as rapidly as possible, which had the effect of hindering, delaying and defrauding his creditors, and such was his intention. The defendant does not say in his exceptions that there was no evidence of those facts, but that they were found by the referee contrary to the evidence. We have already discussed the character of such an exception where the referee's findings have been considered and approved by the judge on exceptions filed to the referee's report. However, there was some evidence to support the findings.
Attention is called by the appellee to the fact that there was no exception taken to the orders of the court as to the lumber or the bond of $5,000, and also to the special condition of the bond requiring any judgment recovered to be paid. The attachment being regular and valid, and intended to bring the defendant before the court to answer in the cause, and the defendant having answered, and the receiver intervened for the purpose of discharging the attachment, for the special purpose just mentioned, and substituting security therefor, first, in the form of lumber, and, second, by bond in lieu thereof, it is apparent that it is too late now to claim that the same security, in the form of a lien on the lumber, was not transferred to the bond when it was given in place of that lien, and further that defendant has waived any defect in the attachment (if there was any, and we concur with the referee that there was not), by appearing and pleading to the merits, and further that the court did not vacate the attachment because of any defect therein, or because of insufficient grounds for issuing it, but simply at the request of defendant and the receiver that it be done, so that the prosecution of the mill business, then in the hands of the receiver, would no longer be interrupted. It was held in Rocky Mount Mills v. R. R., 119 N.C. 693
(affirming order of Hoke, J., refusing to vacate an attachment), that "Where a defendant, brought into court on attachment process, subsequently entered a general appearance and filed an answer to the merits, a motion to dismiss the attachment on the *Page 197 
ground that it would not lie under the statute was properly refused as immaterial." In Symons v. Northern, 49 N.C. 241, Battle, J., said: "A defendant may come into court without process, and confess a judgment (Farley v. Lea, 20 N.C. 307), and we cannot perceive any reason why he may not come in, in the same way, and accept the plaintiff's declaration and plead to it. If this be so, why may he not appear and plead upon the defective process? The main object of the leading process is to bring the defendant into (186) court, and if he does not choose to object in limine to the manner in which he has been brought in, it would be wrong to allow him to do so after he has, by his acts, admitted himself to be there, ready to defend himself against the plaintiff's action." Toms v.Warson, 66 N.C. 417. And in Price v. Sharp, 24 N.C. 417, it was held that "In an attachment the defendant by accepting a declaration and pleading to the merits, waives all objections to any defects in the process." It, perhaps, may be useless to state that a lien is acquired by the levy of an attachment (McMillan v. Parsons, 52 N.C. 163), as such a proposition will hardly be gainsaid. C. S. 767. The lien of the original levy created by the statute was not destroyed or vacated, but is now represented by the bond of the defendants, a new form of security, to be sure, but only as a substitute for the old, upon which the plaintiff is entitled to judgment for the satisfaction of his debt. The report of Referee Herring was properly approved and confirmed by the court in its judgment, which will not be disturbed.
Having taken this view, it is unnecessary to discuss the question as to the alleged laborers' and mechanics' lien arising from possession of the metal checks.
We find no error.
Affirmed.
Cited: Hambley v. White, 192 N.C. 35; Pugh v. Newbern, 193 N.C. 260;Threadgill v. Faust, 213 N.C. 230; Hoft v. Lighterage Co., 215 N.C. 693. *Page 198