TERRY EVANS, Plaintiff v. UNITED SERVICES AUTOMOBILE ASSOCIATION and USAA CASUALTY INSURANCE COMPANY, Defendants

No. COA99-1162

(Filed 6 February 2001)

## 1. Appeal and Error— appealability—interlocutory discovery order—attorney-client privilege—substantial right

Although interlocutory discovery orders are generally not appealable, defendants' appeal from an order partially granting plaintiff's request for the production of documents affects a substantial right and is immediately appealable because: (1) where a party asserts a statutory privilege which directly relates to the

matter to be disclosed under an interlocutory discovery order and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right; and (2) defendants' assertion of the common law attorney-client privilege affects a substantial right which would be lost if not reviewed before the entry of final judgment.

2. **Appeal and Error— appealability—production of internal documents—no request for trial court to bifurcate discovery**

Although defendants contend the trial court erred in an action for breach of contract and bad faith against an insurer by requiring defendants to produce internal documents relating to the bad faith issue prior to a demonstration that the pertinent homeowners' policy provides coverage for plaintiff, this issue is not properly before the Court of Appeals because there was no request that the trial court bifurcate discovery or enter an order under the provisions of N.C.G.S. § 1A-1, Rule 26(d) to sequence or time discovery so that discovery related to the bad faith issues would follow the completion of discovery related to the coverage issues.

3. **Evidence— work product privilege—burden on party asserting**

A party asserting work product privilege bears the burden of showing: (1) that the material consists of documents or tangible things; (2) which were prepared in anticipation of litigation or for trial; and (3) by or for another party or its representatives which may include an attorney, consultant, surety, indemnitor, insurer, or agent.

4. **Discovery— claims diary entries—no abuse of discretion— no work product privilege**

The trial court did not abuse its discretion by denying work product protection to a large number of the claims diary entries prepared by the insurance company defendants detailing actions taken by defendants during the course of plaintiff's insurance claim because documents prepared before an insurance company denies a claim generally will not be afforded work product protection since a reasonable possibility of litigation only arises after an insurance company has made a decision with respect to the claim of its insured.

**5. Evidence— attorney-client privilege—burden on party asserting**

A party asserting the attorney-client privilege bears the burden of establishing that: (1) the relation of attorney and client existed at the time the communication was made; (2) the communication was made in confidence; (3) the communication relates to a matter about which the attorney is being professionally consulted; (4) the communication was made in the course of giving or seeking legal advice for a proper purpose, although litigation need not be contemplated; and (5) the client has not waived the privilege.

**6. Discovery— claims diary entries—no abuse of discretion— no attorney-client privilege**

The trial court did not abuse its discretion by determining that a large number of the claims diary entries prepared by the insurance company defendants detailing actions taken by defendants during the course of plaintiff's insurance claim were not protected by the attorney-client privilege and were discoverable, because: (1) an insurance company and its counsel may not avail themselves of the protection afforded by the attorney-client privilege if the attorney was not acting as a legal advisor when the communication was made; and (2) the trial court did protect twenty-one diary entries that were either requests to counsel for advice and opinions, or were counsel's reply to such requests.

**7. Discovery— investigative report—no abuse of discretion— no work product privilege**

The trial court did not abuse its discretion by compelling discovery of an investigative report compiled by independent claim adjusters hired by the insurance company defendants even though defendants sought to invoke the work product privilege, because: (1) defendants hired the adjusters as part of its investigation into plaintiff's claim and considered the report in making a decision about whether to deny the claim; and (2) it cannot be said as a matter of law that defendants could reasonably anticipate litigation of a coverage question before the investigative procedure was completed and before defendants denied plaintiff's claim.

**8. Discovery— internal memoranda—no abuse of discretion— no attorney-client privilege for all documents**

The trial court did not abuse its discretion by compelling discovery of four out of a total of thirteen of the insurance company defendants' internal memoranda even though defendants contend they were protected by the attorney-client privilege, because: (1) the four discoverable memoranda generated by defendants' in-house counsel were merely brief notations with regard to action being or to be taken on the claim; and (2) the undiscoverable memoranda appear to have been either generated by defendants' claims counsel or directed to counsel focusing on a legal question.

**9. Discovery— online procedures manual—no abuse of discretion**

The trial court did not abuse its discretion by ordering the discovery of four portions of insurance company defendants' online procedures manual containing information to assist in the investigation and disposition of insurance claims, because it cannot be said as a matter of law that the information sought is not reasonably calculated to lead to the discovery of admissible evidence. N.C.G.S. § 1A-1, Rule 26(b)(1)

Appeal by both plaintiff and defendants from orders entered 16 June 1999 and 12 July 1999 by Judge William Z. Wood, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 21 August 2000.

On 11 May 1996, Robert and Helen Evans were attending a yard sale at the home of Terry and Kay Collins Evans, their son and daughter-in-law. On that date, Kay Collins Evans was the named insured in a homeowners' policy issued by defendant USAA Casualty Insurance Company (USAA Casualty). While Robert and Helen Evans were at plaintiff Terry Evan's home, Terry started the engine of a 1978 Mustang automobile he was restoring in his garage. The automobile lurched forward, striking Robert Evans and pinning Helen Evans under the car. Plaintiff's brother-in-law, Lee Grubb, was injured when he attempted to lift the automobile off Helen Evans.

On 12 May 1996, plaintiff reported the accident to defendant USAA Casualty. The following day, a company manager at USAA Casualty sent an "early alert" to the company's senior claims counsel and to the litigation supervisor. The claim was assigned to Bruce

Nath, a senior claims examiner. On 14 May 1996, Nath advised plaintiff that the homeowners' policy might not provide coverage for the accident because of the "motor vehicle exclusion."

Several days later, defendant USAA Casualty advised plaintiff that it was investigating his claim under a reservation of rights. Defendant hired an independent adjuster to gather information about the accident. After completing its investigation, defendant denied coverage on 31 May 1996 for injuries arising from the 11 May 1996 accident and closed its file.

Following its denial of coverage, defendant received correspondence from attorneys for plaintiff's parents and for Grubb. On 17 September 1996, an attorney for Grubb forwarded a settlement package to defendant. Defendant returned the package and reiterated its denial of coverage. Because the claimants had retained attorneys and were contesting the denial of coverage, defendant officially reopened its file on 8 October 1996 "in anticipation of further developments."

On 9 June 1998, Robert and Helen Evans filed suit against Terry Evans. USAA Casualty declined to defend the lawsuit because of its position that its homeowners' policy did not provide coverage to Terry Evans. Likewise, Terry Evans did not defend the lawsuit, and his parents obtained a default judgment against him on 22 September 1998 in the total amount of $1,048,198.91, far exceeding USAA Casualty's policy limits of $300,000.00. A notice of the judgment was sent to defendant USAA Casualty on 22 October 1998. The following day, defendant USAA Casualty consulted outside counsel.

On 18 November 1998, plaintiff filed this suit against both USAA Casualty and United Services Automobile Association, alleging breach of contract, bad faith, and unfair and deceptive trade practices. Plaintiff alleged that defendant United States Automobile Association (USAA) is either the parent company of USAA Casualty—which USAA allegedly directs and controls—or acts jointly with USAA Casualty in issuing insurance policies. In the course of discovery, plaintiff sought to obtain a complete copy of defendants' claims file relating to the incident in question, including copies of reports generated as the result of defendants' investigation, legal opinions obtained by defendants from both in-house and private counsel, and the substance of discussions among defendants' personnel (including their attorneys) who participated in the decision to deny coverage to the plaintiff. Defendants provided a detailed log identifying all docu-

ments in question, but declined to produce many of the documents, alleging that some were protected by the attorney-client privilege, while others were generated in anticipation of litigation. Plaintiff moved to compel discovery of the material defendants alleged to be privileged.

The trial court conducted an *in camera* review of the documents in question, ordered the production of some of them, but found that others were "protected from disclosure by the attorney-client privilege and/or are matters prepared in anticipation of litigation." Defendants filed a motion for relief from the trial court's order, submitting an affidavit from the director of insurance operations for defendants explaining the procedure for making decisions about the denial of coverage. The trial court then entered a second order partially reversing its earlier order, finding that additional portions of the defendants' claims diary were privileged and not subject to production. Both plaintiff and defendants appealed.

> *Robinson & Lawing, L.L.P., by Robert J. Lawing and H. Brent Helms, for plaintiff appellant-appellee.*

> *Kilpatrick Stockton L.L.P., by James H. Kelly, Jr., and Susan H. Boyles, for defendant appellants-appellees.*

HORTON, Judge.

**[1]** Both plaintiff and defendants appeal from orders partially granting requests for the production of documents. Such interlocutory discovery orders are generally not appealable because they usually do not affect a substantial right that would be lost if the trial court's rulings are not reviewed before final judgment. *Mack v. Moore*, 91 N.C. App. 478, 480, 372 S.E.2d 314, 316 (1988), *disc. review denied*, 323 N.C. 704, 377 S.E.2d 225 (1989). Plaintiff moves to dismiss defendants' appeal as interlocutory, while defendants argue that, because the trial court's orders require that they produce material protected by the attorney-client privilege, their appeal involves a substantial right. We agree with defendants' contention.

We note first that the trial court attempted to certify the matter for appeal pursuant to Rule 54(b) of the Rules of Civil Procedure, finding that its rulings affected a substantial right of defendants. The trial court's order was not, however, "final" in nature, and the trial court may not make an interlocutory order immediately appealable by a Rule 54(b) certification. *Lamb v. Wedgewood South Corp.*, 308

N.C. 419, 425, 302 S.E.2d 868, 871 (1983). After careful consideration, however, we find that the trial court's order affects a substantial right of defendants under the holding of our Supreme Court in *Sharpe v. Worland*, 351 N.C. 159, 522 S.E.2d 577 (1999).

In *Sharpe*, the trial court ordered the production of documents concerning the participation of the defendant physician in a Physician's Health Program. Defendants physician and hospital appealed, contending that the records were protected by a statutory privilege and therefore were not subject to disclosure. This Court dismissed defendants' appeal, holding that it was interlocutory and did not affect a substantial right of defendants. In reversing our decision, our Supreme Court held that where "a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right under [N.C. Gen. Stat. §] 1-277(a) and 7A-27(d)(1)." *Sharpe*, 351 N.C. at 166, 522 S.E.2d at 581. Here, defendants assert the common law attorney-client privilege, and we believe that the reasoning of *Sharpe* applies. We hold, therefore, that defendants' appeal affects a substantial right which would be lost if not reviewed before the entry of final judgment and deny plaintiff's motion to dismiss the appeal.

In this case both plaintiff and defendants bring forward numerous assignments of error, presenting two important questions of first impression for our consideration: first, whether the plaintiff in an action for breach of contract and "bad faith" against an insurer is entitled to discover internal documents relating to the bad faith issue prior to demonstrating that defendants' policy provides coverage for plaintiff; second, whether and to what extent either "work product" immunity or attorney-client privilege protect an insurer's claim file (including internal memoranda, correspondence, and legal opinions) from discovery in a "bad faith" claim against the insurer.

I. Bifurcation of Discovery

[2] Defendants argue that the trial court erred in requiring them to produce internal documents because there has not yet been a determination that the homeowners' policy issued by defendants provides coverage for plaintiff's claim.

We are aware that the appellate courts in several of our sister states have held that a plaintiff is not entitled to discover internal

documents generated by an insurer until the plaintiff proves that there is coverage under the policy. *See, for example, Bartlett v. John Hancock Mut. L. Ins. Co.*, 538 A.2d 997, 1000-01 (R.I. 1988); and *Allstate Ins. Co. v. Swanson*, 506 So. 2d 497, 498 (Fla. Dist. Ct. App. 1987). The Federal District Court of Montana has also held that the coverage question must be resolved in favor of the plaintiff before the defendant insurer may be required to produce its claims file. *In re Bergeson*, 112 F.R.D. 692, 697 (D. Mont. 1986). In a similar factual setting, however, the Federal District Court for the Middle District of North Carolina denied the defendant's motion to bifurcate coverage and bad faith claims for discovery purposes, holding that it is "better to require that the discovery of the underlying contract claim and the bad faith claim proceed at the same time . . . ." *Ring v. Commercial Union Ins. Co.*, 159 F.R.D. 653, 658 (M.D.N.C. 1995).

Plaintiff argues that this question is not properly before us on this appeal, because it was not raised in the trial court. Rule 10(b)(1) of our Rules of Appellate Procedure provides in pertinent part that "[i]n order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent." *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991). In *Eason*, defendant contended that the trial court erred in denying his motion to suppress evidence seized pursuant to a search warrant because the officer serving the warrant allegedly failed to comply with the provisions of N.C. Gen. Stat. § 15A-252. In declining to consider defendant's argument, our Supreme Court stated that "[n]othing in the record before us indicates that the trial court had anything before it referring to the officer's alleged violation of the statute when it denied the defendant's motion. This Court will not consider arguments based upon matters not presented to or adjudicated by the trial tribunal." *Eason*, 328 N.C. at 420, 402 S.E.2d at 814.

Here, there was no request that the trial court bifurcate discovery or enter an order pursuant to the provisions of Rule 26(d) to sequence or time discovery so that discovery related to the bad faith issues would follow the completion of discovery related to the coverage issues. Thus, we must agree with plaintiff that this important issue is not properly before us at this time.

As it seems likely, however, that this question will continue to arise in the trial courts, we point out that our Rules of Civil Procedure permit the parties to use discovery methods in any sequence, *unless*

the trial court "upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise . . . ." N.C. Gen. Stat. § 1A-1, Rule 26(d) (1999). Thus, it appears that a party may move that the trial court in its discretion schedule discovery so that discovery related to a coverage question precedes discovery related to a bad faith claim. Before making its decision on a motion to bifurcate the issues or to sequence discovery, the trial court should consider, among other things, the factual context in which the question arises, as well as the existence and nature of the coverage dispute. Further, since the determination of the existence of coverage under an insurance policy is a question of law for decision by the trial court, the trial court may choose to expedite a hearing to determine the coverage question.

Because the bifurcation issue is not properly before us at this time, we overrule this assignment of error.

## II. Immunity and Privilege Issues

"The primary purpose of the discovery rules is to facilitate the disclosure prior to trial of any unprivileged information that is relevant and material to the lawsuit so as to permit the narrowing and sharpening of the basic issues and facts that will require trial." *Bumgarner v. Reneau*, 332 N.C. 624, 628, 422 S.E.2d 686, 688-89 (1992). Rule 26 provides for a broad scope of discovery: ·

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . .

N.C. Gen. Stat. § 1A-1, Rule 26(b)(1) (1999). The test of relevancy set out in Rule 26(b)(1) is much less stringent than the standard of relevancy found in N.C. Gen. Stat. § 8C-1, Rule 401 (1999). For discovery purposes, information need only be "reasonably calculated to lead to the discovery of admissible evidence . . . ." N.C. Gen. Stat. § 1A-1, Rule 26(b)(1).

Both parties in the instant case appeal orders by the trial judge compelling and denying discovery of certain documents. These orders contain neither findings of fact nor conclusions of law. Instead, the orders list each document as discoverable or "protected from disclosure by the attorney-client privilege and/or are matters prepared in anticipation of litigation." The purpose of requiring find-

ings of fact and conclusions of law by trial courts is to allow meaningful review by the appellate courts. *O'Neill v. Bank*, 40 N.C. App. 227, 231, 252 S.E.2d 231, 234 (1979). Rule 52(a)(2) of the North Carolina Rules of Civil Procedure states, however, that "[f]indings of fact and conclusions of law are necessary on decisions of any motion . . . only when requested by a party . . . ." N.C. Gen. Stat. § 1A-1, Rule 52(a)(2) (1999).

Here, the record does not reveal that either party requested that the trial judge make findings of fact. It has been repeatedly held by our Supreme Court that, "[w]hen the trial court is not required to find facts and make conclusions of law and does not do so, it is presumed that the court on proper evidence found facts to support its judgment." *Estrada v. Burnham*, 316 N.C. 318, 324, 341 S.E.2d 538, 542 (1986); *Sherwood v. Sherwood*, 29 N.C. App. 112, 113-14, 223 S.E.2d 509, 510-11 (1976). Thus, it is within the trial judge's discretion whether to make findings of fact "if a party does not choose to compel a finding through the simple mechanism of so requesting." *Watkins v. Hellings*, 321 N.C. 78, 82, 361 S.E.2d 568, 571 (1987). Further, it is well established that orders regarding discovery matters are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of that discretion. *Hudson v. Hudson*, 34 N.C. App. 144, 145, 237 S.E.2d 479, 480, *disc. review denied*, 293 N.C. 589, 239 S.E.2d 264 (1977); *Insurance Co. v. Sprinkler Co.*, 266 N.C. 134, 143, 146 S.E.2d 53, 62 (1966). We must therefore examine the trial court's application of the work product doctrine and the attorney-client privilege under an abuse of discretion standard.

The documents that plaintiff seeks to discover may be organized into four categories: (A) entries in a "claims diary"; (B) a report by outside investigator Ward-THG; (C) internal memoranda; and (D) internal policy manuals. We will examine in detail the trial court's rulings as they relate to the documents in each category.

A.

Defendants' "claims diary" is a document containing about 115 computer entries dated 12 May 1996 through 30 December 1998, detailing actions taken by defendants during the course of plaintiff's claim, including summaries of conferences with in-house and outside counsel. Many of the entries are brief procedural "summaries" or notes containing little pertinent information, privileged or otherwise. After reviewing the claims diary *in camera*, the trial court found that

twenty-one entries were protected in whole or part by the attorney-client privilege. Following a second hearing, the court found that four additional diary entries were shielded from discovery under the work product doctrine. The trial court then ordered production of the remaining portions of the claims diary. The documents submitted to the trial court for its *in camera* inspection were filed as a part of the record on appeal and have been carefully examined by this Court. The claims diary contains handwritten marginal notes apparently made by the trial court beside the entries found to be protected, designating each entry as "privileged," or occasionally "privileged atty."

Defendants argue that all of the diary entries are protected from discovery by either the "work product" doctrine or the attorney-client privilege, and that plaintiff is entitled to none of the information in the claims diary. Rule 26 of our Rules of Civil Procedure tempers its broad grant of the power to discover any matter relevant to pending litigation through an exemption for privileged matter (such as the attorney-client privilege), provision for protective orders, and a qualified immunity for documents and other tangible things prepared "in anticipation of litigation." N.C. Gen. Stat. § 1A-1, Rule 26(b)(3). The protection given to matters prepared in anticipation of trial, or "work product," is not a privilege, but a "qualified immunity." *Willis v. Power Co.*, 291 N.C. 19, 35, 229 S.E.2d 191, 201 (1976). "The protection is allowed not only [for] materials prepared after the other party has secured an attorney, but those prepared under circumstances in which a reasonable person might anticipate a possibility of litigation." *Id.* If a document is created in anticipation of litigation, the party seeking discovery may access the document only by demonstrating a "substantial need" for the document and "undue hardship" in obtaining its substantial equivalent by other means. N.C. Gen. Stat. § 1A-1, Rule 26(b)(3). Materials that are prepared in the ordinary course of business, however, are not protected by the work product immunity. *Willis*, 291 N.C. at 35, 229 S.E.2d at 201. Furthermore, work product containing the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation in which the material is sought" is not discoverable. N.C. Gen. Stat. § 1A-1, Rule 26(b)(3); *National Union Fire Ins. v. Murray Sheet Metal*, 967 F.2d 980, 983-84 (4th Cir. 1992).

The primary reasons for the protection given by Rule 26 to materials prepared in anticipation of litigation are to maintain the adversarial trial process and to ensure that attorneys are properly prepared

for trial by encouraging written preparation. *Hickman v. Taylor,* 329 U.S. 495, 510-12, 91 L. Ed. 451, 462-63 (1947). Attorneys should not be deterred from adequately preparing for trial because of fear that the fruits of their labors will be freely accessible to opposing counsel. *Id.* at 511, 91 L. Ed. at 462. Allowing discovery of work product could have a "demoralizing" effect on the legal profession. *Id.* Finally, allowing discovery of work product could lead to a party's attorney being called as a witness. *Id.* at 517, 91 L. Ed. at 465 (Jackson, J., concurring).

**[3]** Balanced against the importance of protecting work product is the fundamental consideration that procedural rules should be construed to allow discovery of all relevant information in order to facilitate a trial based on the true and complete issues. *See Hickman,* 329 U.S. at 507, 91 L. Ed. at 460. "Because work product protection by its nature may hinder an investigation into the true facts, it should be narrowly construed consistent with its purpose[,]" which is to "safeguard the lawyer's work in developing his client's case." *Suggs v. Whitaker,* 152 F.R.D. 501, 505 (M.D.N.C. 1993); *accord, Pete Rinaldi's Fast Foods v. Great American Ins.,* 123 F.R.D. 198, 201 (M.D.N.C. 1988). Therefore, the party asserting work product privilege bears the burden of showing "(1) that the material consists of documents or tangible things, (2) which were prepared in anticipation of litigation or for trial, and (3) by or for another party or its representatives which may include an attorney, consultant, surety, indemnitor, insurer or agent." *Suggs,* 152 F.R.D. at 504-05; *Sandberg v. Virginia Bankshares, Inc.,* 979 F.2d 332, 355 (4th Cir. 1992); *Rinaldi,* 123 F.R.D. at 201.

**[4]** This Court has recently noted that the phrase "in anticipation of litigation" encompasses a concept without sharply defined boundaries. *Cook v. Wake County Hospital System,* 125 N.C. App. 618, 623, 482 S.E.2d 546, 550, *disc. review allowed,* 346 N.C. 277, 487 S.E.2d 543 (1997). In the context of insurance litigation, determining whether a document was created in anticipation of litigation is particularly challenging because the very nature of the insurer's business is to investigate claims, and from the outset the possibility exists that litigation will result from the denial of a claim. Because insurance companies regularly investigate claims, such investigations would normally seem to be in the ordinary course of business rather than in anticipation of litigation. *See* M. Elizabeth Medaglia, *et al., Privilege, Work Product, and Discovery Issues in Bad Faith Litigation,* 32 Tort & Ins. L.J. 1, 12 (1996).

Our decision in *Cook v. Wake County Hospital System* provides some guidance in determining whether documents are prepared in the ordinary course of business, rather than in anticipation of litigation. In *Cook*, plaintiff was injured in a fall on the premises of defendant hospital. Pursuant to the hospital's risk management policies, a form entitled "Hospital Incident or Accident Report" was prepared by hospital personnel within twenty-four hours after the accident. After plaintiff filed suit, defendant declined to produce the accident report, and plaintiff sought to compel its production. We held that the trial court erred in failing to require the production of the accident report, which was prepared in furtherance of a "number of nonlitigation, business purposes." *Cook*, 125 N.C. App. at 625, 482 S.E.2d at 551. "In short, the accident report would have been compiled, pursuant to the hospital's policy, regardless of whether [plaintiff] intimated a desire to sue the hospital or whether litigation was ever anticipated by the hospital." *Id.* at 625, 482 S.E.2d at 551-52. Because the accident report was prepared as a part of routine procedure, it was not protected from discovery as a document prepared in anticipation of litigation.

We are aware that there is disagreement among our sister jurisdictions as to whether insurance claims files should be granted work product privilege. Some courts require direct involvement of an attorney before granting protection. *See, for example, Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 372 (N.D. Ill. 1972). Other cases appear to indicate that any document prepared as a result of an accident should be considered as being prepared in anticipation of litigation. *See, for example, Almaguer v. Chicago, Rock Island & Pacific Railroad Co.*, 55 F.R.D. 147, 149 (D. Neb. 1972). We do not believe that this complex question is capable of a simple "bright-line" answer, however, and elect to follow the case-by-case approach of the federal courts in North Carolina. *See, for example, Suggs*, 152 F.R.D. at 506; *Rinaldi*, 123 F.R.D. at 202.

Here, defendants carried out the investigative process and ultimately denied plaintiff's claim. It appears that the investigation stage of the claims process is one carried out in the ordinary course of an insurer's business within the meaning of *Willis* and *Cook*. Until defendants determined that their homeowners' policy did not provide coverage to plaintiff, we cannot say as a matter of law that defendants "reasonably" anticipated litigation. Consequently, we do not believe that material prepared in the course of the investigatory process is normally entitled to the Rule 26 qualified work product immunity. We

acknowledge the possibility of litigation in any such case with catastrophic injuries, but decline to hold that even in such tragic cases litigation can be reasonably anticipated prior to a decision on coverage. Even in cases where coverage is clear, a plaintiff might well disagree with an insurer about the damages to be paid. While that is also true as to almost any case, we cannot conclude that there is a reasonable possibility of litigation in every case.

Thus, documents prepared before an insurance company denies a claim generally will not be afforded work product protection. *See Ring*, 159 F.R.D. at 656 ("the general rule is that a reasonable possibility of litigation only arises after an insurance company has made a decision with respect to the claim of its insured."). This general rule is not absolute, of course, and an insurer may produce evidence of circumstances that support the conclusion that it reasonably anticipated litigation prior to denial of the claim. "[I]f the insurer argues it acted in anticipation of litigation before it formally denied the claim, it bears the burden of persuasion by presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate." *Rinaldi*, 123 F.R.D. at 202.

After an exhaustive review of the entries in the claims file at issue in the case before us, we cannot say on this record that the trial court abused its discretion in denying "work product" protection to a large number of the claims diary entries. We now consider whether the trial court abused its discretion in determining that some of the entries in the claims diary were not protected by the attorney-client privilege.

Like the work-product exception, the attorney-client privilege may result in the exclusion of evidence which is otherwise relevant and material. Thus, courts are obligated to strictly construe the privilege and limit it to the purpose for which it exists. *Upjohn Co. v. United States*, 449 U.S. 383, 66 L. Ed. 2d 584 (1981); *State v. Smith*, 138 N.C. 700, 50 S.E. 859, 860 (1905).

The attorney-client privilege operates to protect confidential communications between attorneys and their clients. "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389, 66 L. Ed. 2d at 591. The privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable counsel to give sound

and informed advice. *Upjohn,* 449 U.S. at 390, 66 L. Ed. 2d at 592; *Jones v. Marble Co.,* 137 N.C. 237, 239, 49 S.E.2d 94, 95 (1904).

[5] The burden of establishing the attorney-client privilege rests upon the claimant of the privilege. A privilege exists if "(1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose, although litigation need not be contemplated, and (5) the client has not waived the privilege. *State v. McIntosh,* 336 N.C. 517, 523-24, 444 S.E.2d 438, 442 (1994) (quoting *State v. Murvin,* 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981)).

[6] The mere fact that the evidence relates to communications between attorney and client alone does not require its exclusion. "Only confidential communications are protected. If it appears by extraneous evidence or from the nature of a transaction or communication that they were not regarded as confidential, or that they were made for the purpose of being conveyed by the attorney to others, they are stripped of the idea of a confidential disclosure and are not privileged." *Dobias v. White,* 240 N.C. 680, 684-85, 83 S.E.2d 785, 788 (1954) (citation omitted). Thus, although the protection given to communications between attorney and client apply equally to inhouse counsel, *see generally Upjohn,* 449 U.S. 383, 66 L. Ed. 2d 584; *Shelton v. American Motors Corp.,* 805 F.2d 1323 n.3 (8th Cir. 1986), an insurance company and its counsel may not avail themselves of the protection afforded by the attorney-client privilege if the attorney was not acting as a legal advisor when the communication was made.

Here, it appears that the twenty-one diary entries found by the trial court to be protected by the attorney-client privilege were either requests to counsel for advice and opinions, or were counsel's reply to such requests. Upon careful review of the record, we find no evidence that the trial court abused its discretion when it ordered the partial production and partial protection of the claims diary entries.

### B.

[7] Defendants also argue that the trial judge erred in compelling discovery of an investigative report compiled by independent claim

adjusters (Ward-THG) hired by defendants. The report, dated 22 May 1996, contains an accident report, interviews with plaintiff and the investigating police officer, and photographs of the accident scene. Defendants argue that the trial court erred in failing to find the Ward-THG report shielded from discovery as work product. We disagree. Defendants hired Ward-THG as part of its investigation into plaintiff's claim and considered the report in making a decision about whether to deny the claim. As we point out above, we cannot find as a matter of law that defendants could "reasonably anticipate" litigation of a coverage question before the investigative procedure was completed and before defendants denied plaintiff's claim. We find no evidence that the trial judge abused his discretion in ordering the production of the Ward-THG report.

C.

[8] Next, both parties argue that the trial court erred in its order regarding production of defendants' internal memoranda. Of the thirteen documents marked as exhibits, the trial court required that defendants produce four of the documents. All of the remaining documents appear to have been either generated by defendants' claims counsel or directed to counsel, and all appear to be focused on the central legal question of whether the automobile at issue in this case was in "dead storage" at the time of the accident in question. Applying our decisions with regard to attorney-client privilege as discussed above, we cannot find that the trial court abused its discretion in declining to order production of these documents. The four memoranda ordered to be produced by the trial court were also generated by defendants' in-house counsel, but are brief notations with regard to action being, or to be, taken on the claim. While there is a cogent argument that several of the memoranda ordered disclosed are protected by attorney-client privilege, we cannot find that the order requiring their production was an abuse of discretion by the trial court.

D.

[9] Finally, defendants contend that the trial court erred in ordering the production of four portions of defendants' online procedures manual, a reference database containing voluminous information to assist in the investigation and disposition of insurance claims. The document marked Exhibit 17 is a detailed description of intracompany claims handling procedures. Plaintiff argues that he is entitled to discover this document to determine whether defendants complied

with their own internal procedures in denying the homeowners' claim giving rise to this litigation. Likewise, Exhibit 20 is a document which contains guidelines for referring claim files to in-house or private counsel for resolution of legal issues. There is no evidence of record that defendants' employees consulted these procedural manuals in making the coverage decision in this case, and defendants argue that their contents are irrelevant to this litigation. While the documents might not be admitted at a future trial, we cannot say as a matter of law that the information sought is not "reasonably calculated" to lead to the discovery of admissible evidence. See N.C. Gen. Stat. § 1A-1, Rule 26(b)(1). Therefore, considering the broad parameters of relevancy in the discovery process, we cannot say that the trial court abused its discretion in ordering production of Exhibits 17 and 20.

Exhibit 18 is a distillation of research into court decisions involving the definition of "dead storage," and suggests some of the facts and circumstances that are important in determining when an automobile is in "dead storage" for insurance purposes. Exhibit 19 is a collection of laws and regulations in the area of claims handling and unfair claims practices. Defendants argue that this information is available to plaintiff elsewhere, and to require production of these documents gives plaintiff the benefit of defendants' research. While this is an argument a trial court may properly consider in ordering production of documents of this sort, in this case we cannot find that the trial court abused its discretion in requiring their production.

We find support for our position in the decisions of other jurisdictions and the federal courts. See, for example, Blockbuster Entertainment Corp. v. McComb Video, 145 F.R.D. 402, 404-05 (M.D. La. 1992) (policy manuals are discoverable); Hoechst Celanese v. National Union, 623 A.2d 1099, 1107 (Del. 1991) (internal policy memoranda and guidelines discoverable).

In summary, we have reviewed the trial court's rulings on these discovery motions under an abuse of discretion standard, there having been no request that the trial court make findings of fact or conclusions of law with regard to its rulings. We also stress that important related questions, such as waiver of the attorney-client privilege and a demonstration of the necessity for production of documents otherwise protected as work product, are not before us on this appeal but are for another day.

It appearing that the trial court conscientiously examined all documents in question herein and soundly exercised its discretion in

light of case law interpreting our discovery rules, the orders of the trial court must be, and hereby are

Affirmed.

Chief Judge EAGLES and Judge MARTIN concur.