KATHY L. ISOM, Plaintiff v. BANK OF AMERICA, N.A., Defendant

No. COA05-946

(Filed 2 May 2006)

**1. Appeal and Error— appealability—discovery order—some documents protected, some not—immediately appealable**

The immediate appeal of a trial court discovery order protecting some but not all of the documents in question affected a substantial right that would otherwise be lost, and the order was reviewed. However, the order will be upset only by a showing that the trial court abused its discretion.

**2. Discovery— emails—attorney-client privilege—inapplicability**

Emails exchanged between bank officials were not protected from discovery by the attorney-client privilege where they suggested a purely business matter, were not for legal advice, and the attorneys were copied merely for information. A document without privilege in the hands of the client does not become privileged merely because it is handed to the attorney.

**3. Discovery— emails—attorney-client privilege—applicability**

The trial court did not abuse its discretion by finding that certain emails were protected from discovery by the attorney-client privilege where the attorney-client relationship was firmly established at the time the emails were sent; the emails were apparently exchanged in confidence; they related to discovery matters about which the attorneys were being consulted; and they were exchanged in the course of litigation and arbitration.

ISOM v. BANK OF AM., N.A.

[177 N.C. App. 406 (2006)]

**4. Discovery— attorney-client privilege—applicability**

The trial court did not abuse its discretion by ruling that an email from counsel discussing revisions to a draft resolution and an email from in-house counsel were protected from discovery by the attorney-client privilege and that an email from attorneys requesting a meeting and an email from defendant shared with attorneys and nonattorneys were not so protected.

**5. Evidence— attorney-client privilege—draft document—pending litigation**

A draft document prepared in relation to pending litigation but not as a confidential communication between attorney and client was not protected by attorney-client privilege.

**6. Evidence— emails—discovery—work product doctrine**

The trial court did not abuse its discretion by determining that certain emails were not shielded from discovery by the work product doctrine. A review of the text of the emails yields a wholly reasonable determination that the intent of the exchange was not in anticipation of litigation. Business emails which are copied to an attorney are not protected by the work product doctrine solely due to the fact that they were sent while the business was contemplating litigation.

**7. Discovery— emails—work product doctrine**

The trial court did not abuse its discretion in its determination of whether certain emails were protected by the work product doctrine and were discoverable. Plaintiff's email stating her inclination not to sign a document was not drafted by an attorney, nor was it necessarily prepared in anticipation of litigation. However, the draft declaration defendant was asked to sign was prepared by defendant's attorneys in anticipation of litigation, falls squarely within the definition of attorney work product, and is protected.

**8. Evidence— work product doctrine—exception—substantial need and evidence unavailable elsewhere**

The trial court did not abuse its discretion by applying an exception to the work product doctrine to a document which plaintiff refused to sign (and for which she was allegedly fired) where plaintiff adequately demonstrated a substantial need and inability to obtain the information elsewhere.

**9. Discovery— depositions allowed—further objections allowed.**

The trial court did not abuse its discretion by allowing plaintiff to depose individuals in connection with discoverable documents, while allowing defendant to raise further attorney-client and work-product objections.

**10. Appeal and Error— preservation of issues—broadside assignment of error—dismissed**

A single broadside assignment of error which encompassed at least three cognizable and specific legal reasons for error was dismissed.

Cross appeals by defendant and plaintiff from an order entered 13 April 2005 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 February 2006.

*Murphy & Chapman, P.A., by Jenny L. Sharpe, for plaintiff.*

*Hunton & Williams, L.L.P., by Frank E. Emory, Jr., Anthony R. Foxx, and K. Stacie Corbett, for defendant.*

ELMORE, Judge.

Kathy L. Isom (Isom) and Bank of America, N.A. (Bank) enter cross appeals from a discovery order granting, in part, the Bank's motion for a protective order, and granting, in part, Isom's motion to compel. After a careful review of the trial court's order, the relevant law, and the parties' arguments, we determine the trial court did not abuse its discretion in issuing the order.

Isom worked for the Bank as a Vice President and manager in the Consumer Deposits Products division. Her duties included managing and implementing programs designed to assist individuals and businesses with their checking needs, and interfacing with the Bank's check vendors. In that capacity, she was intricately involved in the Bank's check vendor consolidation project: an apparent assessment to determine whether the Bank should convert from dual check vendors to a single vendor. The Bank decided to make the consolidation, thus creating a conflict with one of its current vendors. That vendor, under the parties' contract, sought arbitration of the alleged breach. In response, the Bank filed a suit in federal court seeking preliminary and permanent injunctive relief.

ISOM v. BANK OF AM., N.A.

[177 N.C. App. 406 (2006)]

On or about 30 January 2004 Isom attended a meeting with bank officials and the Bank's attorneys. There, Isom was asked to sign a document relating to the pending dispute with the check vendor. She refused to sign the document at that time and several times thereafter, claiming it was not accurate.

In February 2004, Isom's supervisor reviewed discovery documents from the check vendor that indicated Isom had relayed sensitive Bank information regarding those proceedings to one of the vendor's employees. That employee was deposed 15 March 2004, and confirmed Isom had provided him with the information contained in the discovery documents.

Thereafter, in late March, the Bank terminated Isom's employment. Isom, in her complaint against the Bank for wrongful discharge, contends the Bank fired her because she would not sign a court-related document presented by the Bank's attorneys, a document that she claims was inaccurate or not truthful. She alleges her termination was in violation of our state's public policy. The Bank responds that Isom was fired for disclosing confidential information, in violation of a non-disclosure agreement related to its check vendor consolidation project. Accordingly, the Bank filed a counterclaim against Isom alleging breach of contract, breach of ethics policies, and breach of fiduciary duties.

The trial court's order at issue before us arises from discovery matters in Isom's wrongful termination suit. Generally speaking, Isom sought information from the Bank related to its dispute with the check vendor. She requested the document she refused to sign, correspondence exchanged between her and the Bank's attorneys pertaining to the vendor dispute, as well as correspondence exchanged between her and other bank officials. The Bank argued that these requests were protected by attorney-client privilege or the work product doctrine, and thus were non-discoverable. The Bank also advanced these theories in protecting information requested by Isom in two depositions. The Bank filed a motion for a protective order regarding the requested documents and testimony on 14 July 2004. Several days later, on 27 July 2004, Isom filed a motion to compel discovery.

Following a hearing on the parties' motions, held 30 August 2004, the Bank presented the requested documents to the trial court on 2 September 2004 for *in camera* inspection. The trial court sent a letter to the Bank's attorneys on 29 October 2004, stating that it had deter-

mined some of the documents were discoverable and were to be produced as requested. The Bank responded by requesting an order clarifying the court's ruling and certifying the issue for appeal. By order issued 13 April 2005, the trial court listed the documents that were to be discovered pursuant to Isom's motion to compel and stated that the remaining documents were non-discoverable pursuant to the Bank's motion for a protective order. The order also certified the issue for immediate appeal.

On appeal, Isom and the Bank, respectively, contend that all the documents should have been discoverable or all the documents should have been protected. As such, each party asks us to affirm in part and reverse in part the trial court's order.

[1] A review of discovery orders is generally considered interlocutory and therefore not usually immediately appealable unless they affect a substantial right. "[W]here a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right . . . ." *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 24, 541 S.E.2d 782, 786, *cert. denied*, 353 N.C. 371, 547 S.E.2d 810 (2001). And, since this appeal affects a substantial right that would be lost if not reviewed before the entry of final judgment, the issue is properly before us. That said, our review of a trial court's discovery order is quite deferential: the order will only be upset on appeal by a showing that the trial court abused its discretion. *See id.* at 27, 541 S.E.2d at 788. To demonstrate such abuse, the trial court's ruling must be shown to be "manifestly unsupported by reason" or not the product of a "reasoned decision." *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 601, 617 S.E.2d 40, 45 (2005), *aff'd. per curiam*, 360 N.C. 356, 625 S.E.2d 779 (2006). When the trial court acts within its discretion, "[t]his Court may not substitute its own judgment for that of the trial court." *Id.*

Consequently, we will review the *in camera* documents presented to the trial court and determine whether it abused its discretion in determining that some, but not all, of the documents were protected. We will address the parties' questions presented according to the two theories of protection asserted: first, the theory of attorney-client privilege, and should any documents not be protected by that privilege, we will next review the trial court's determinations as to the work product doctrine. Then, we will review the court's application of any exception to the work product doctrine.

The sixteen documents addressed in the trial court's order can be generally characterized as falling into four distinct groups. The first group consists of six emails exchanged between bank officials and copied to its attorneys. The next group of five emails discusses various discovery issues in the pending vendor dispute. A third group of four emails involves the actual document Isom refused to sign. The final *in camera* document, and the final group, was the draft declaration that Isom had been asked to sign.

I.

[2] The attorney-client privilege protects communications if:

> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.

*State v. Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981); *Evans*, 142 N.C. App. at 32, 541 S.E.2d at 791.

As to the first group, those emails exchanged between bank officials, the trial court ruled the attorney-client privilege was not applicable to protect their discovery. We agree. Through our review, these emails do not seem to have been sent or received for the purpose of giving or seeking legal advice. Much to the contrary, the emails suggest a purely business matter. The Bank's attorneys appear to have been copied in the exchange merely for informational purposes. "[A] document, which is not privileged in the hands of the client, will not be imbued with the privilege merely because the document is handed over to the attorney." *Mason C. Day Excavating, Inc., v. Lumbermens Mut. Cas. Co.*, 143 F.R.D. 601, 607 (M.D.N.C. 1992) (citing *Gould, Inc. v. Mitsui Min. & Smelting Co.*, 825 F.2d 676, 679-80 (2nd Cir. 1987)). As such, the trial court did not abuse its discretion in ordering these emails discoverable.

[3] As to the second group, emails discussing the pending vendor litigation and arbitration, the trial court found these documents were protected by the attorney-client privilege. We again determine no abuse of discretion in this ruling. At the time these emails were sent, the attorney-client relationship was firmly established; the emails were apparently exchanged in confidence; they related to discovery

matters about which the attorneys were being professionally consulted; and they were exchanged in the course of litigation and arbitration proceedings. *See Evans*, 142 N.C. App. at 32, 541 S.E.2d at 791.

**[4]** The trial court issued more individualized rulings to the third group of documents than the previous two. This group consisted of: 1) an email discussing revisions to the draft declaration Isom was asked to sign; 2) an email from outside counsel to various individuals requesting a meeting to discuss those revisions; 3) an email from in-house counsel to various individuals; and 4) an email written and sent by Isom, in which she expressed her reluctance to sign the document. Although if permitted to consider the decision on these documents anew, we may arrive at a different conclusion, we cannot say that the trial court's application of the attorney-client privilege here was "manifestly unsupported by reason." *See Bourlon*, 172 N.C. App. at 601, 617 S.E.2d at 45. The trial court found that the first and third emails were protected, but under the circumstances the second and fourth emails were not. An email requesting a meeting and another shared with both attorneys and non-attorneys are not generally protected by the attorney-client privilege. *See Hartsell v. Hartsell*, 99 N.C. App. 380, 392-93, 393 S.E.2d 570, 578 (1990) (attorney's request to client to come to office was not protected by attorney client privilege, only communications that were intended to be confidential are), *aff'd. per curiam*, 328 N.C. 729, 403 S.E.2d 307 (1991).

**[5]** As to the last group, the draft declaration itself, the trial court ruled it was not protected by attorney-client privilege. Since the declaration does not appear to have been intended as a confidential communication between attorney and client, but rather a court document prepared in relation to the pending vendor litigation, it can hardly be said that the trial court abused its discretion. It does, however, highlight the Bank's alternative argument for protection.

II.

The Bank argues that those documents not deemed protected by the attorney-client privilege were nevertheless protected by the work product doctrine, and thus the trial court erred in ruling some of the *in camera* documents discoverable. In order to successfully assert protection based on the work product doctrine, the party asserting the protection, the Bank here, bears the burden of showing " '(1) that the material consists of documents or tangible things, (2) which were prepared in anticipation of litigation or for trial, and (3) by or for another party or its representatives which may include

an attorney, consultant . . . or agent.' " *Evans*, 142 N.C. App. at 29, 541 S.E.2d at 789 (quoting *Suggs v. Whittaker*, 152 F.R.D 501, 504-05 (M.D.N.C. 1983)).

[6] As to the first group of documents, the trial court determined these emails were not shielded from discovery by the work product doctrine. We see no abuse of discretion in that determination. Notwithstanding the fact that these emails were exchanged during the pending legal dispute between the Bank and its check vendor, a review of their text yields a wholly reasonable determination that the intent of the exchange was not in anticipation of litigation or for the purpose of preparing for trial. These emails appear to be nothing more than that which would be sent in the ordinary course of business. And, it goes without saying that any otherwise business emails, copied to an attorney, are not protected by the work product doctrine solely due to the fact they were sent during a time when the business is anticipating litigation. *See Mason C. Day Excavating*, 143 F.R.D. at 607.

[7] Since the trial court determined the second group of documents, as well as the first and third email from the third group, was covered by the attorney-client privilege, there is no need to review whether the work product doctrine was applicable to them. However, the remaining documents produced for *in camera* inspection—the email written by Isom, the email containing a meeting request, and the draft declaration Isom was asked to sign—must be reviewed since the trial court ruled the attorney-client privilege did not shield them. The trial court ruled these documents were also not protected by the work product doctrine, or otherwise fell within the doctrine's exception, and were thus discoverable. We see no abuse of discretion in that determination either. Ms. Isom's email was not drafted by an attorney, nor was it necessarily prepared in anticipation of litigation; it is a statement of her inclination not to sign a document. And since the work product doctrine should be narrowly construed consistent with its purpose, which is to safeguard the lawyer's work in developing his client's case, *see Suggs*, 152 F.R.D 501 at 505, we cannot say that the trial court abused its discretion when ruling on the meeting request. Last is the draft declaration Isom was asked to sign. This document was clearly prepared by the Bank's attorneys in anticipation of the litigation and arbitration between the Bank and its check vendor. Therefore, it falls squarely within the definition of attorney work product and, barring a showing by Isom of any exception, is protected.

**[8]** Isom may discover a document protected by the work product doctrine if she can demonstrate that a "substantial need" for the document exists and she would undergo "undue hardship" if forced to obtain a substantial equivalent by other means.

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

N.C. Gen. Stat. § 1A-1, Rule 26(b)(3) (2005). The trial court stated that Isom had adequately demonstrated a substantial need and inability to obtain the information elsewhere. Her cause of action and theory of the case is based on proving that she was fired for refusing to sign this draft declaration. And, since the Bank is the only party in possession of this particular document, we determine the trial court did not abuse its discretion in applying the exception to the work product doctrine for this declaration.

### III.

**[9]** The Bank additionally argues that the trial court abused its discretion in allowing Isom to depose those individuals named in the discoverable documents. While such depositions are allowed by the order, the Bank is not precluded from asserting any privilege that might protect other documents or testimony uncovered during the deposition but not yet reviewed by the trial court.

> Any deposition taken pursuant to this Order shall be considered protected information by all parties. Any information Defendant considers protected by the work-product doctrine and/or attorney-client privilege may be submitted first to the Trial Court for an *in camera* review and determination within 30 days of the deposition.

As such, we cannot say that the trial court abused its discretion in allowing Isom to depose individuals in connection to the discoverable documents, while yet allowing the Bank to raise further objections.

### IV.

**[10]** Isom's cross appeal rests on the assumption that all the *in camera* documents should have been discoverable. Isom also argues that

the crime-fraud exception to the attorney-client privilege is applicable to all the documents related to the declaration. However, Isom's single assignment of error does not comport with the Rules of Appellate Procedure and warrants dismissal. *See, e.g., May v. Down East Homes of Beulaville, Inc.*, 175 N.C. App. 416, 623 S.E.2d 345 (2006); *Walker v. Walker*, 174 N.C. App. 778, 624 S.E.2d 639 (2005); *Wade v. Wade*, 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 265-66, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985); *Electric Co. v. Carras*, 29 N.C. App. 105, 107-08, 223 S.E.2d 536, 538 (1976). Her broadside assignment of error encompasses at least three, if not more, cognizable and specific legal reasons why the trial court erred. *See* N.C.R. App. P. 10(c)(1) ("Each assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned."). Furthermore, the assignment of error makes no specific reference to the crime-fraud exception. Accordingly, we dismiss Isom's cross appeal.

In conclusion, we determine that the trial court exercised reasoned and deliberate care in ordering that some of the *in camera* documents were discoverable and some were shielded. Naturally, this appeal is limited to the order before us and we take no position as to the merits of the underlying case.

Affirmed.

Judges McCULLOUGH and LEVINSON concur.