Safety Test & Equip. Co. v. Am. Safety Util. Corp., 2014 NCBC 40.

STATE OF NORTH CAROLINA

COUNTY OF CLEVELAND

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 1037

SAFETY TEST & EQUIPMENT
COMPANY, INC.,

        Plaintiff,

v.

AMERICAN SAFETY UTILITY
CORPORATION; CHARLES R. PRICE;
CHARLES A. PRICE; JOHN E.
HAMRICK; CHRISTOPHER T.
MCMAHAN; and THOMAS M. CURRY
III,

        Defendants.

ORDER AND OPINION

{1}      THIS MATTER is before the court on Plaintiff's Motion to Compel Production of Documents ("Motion") brought under Rules 34(a) and 37(a)(2) of the North Carolina Rules of Civil Procedure. For the reasons stated below, the Motion is GRANTED.

> *Enns & Archer LLP by Rodrick J. Enns and Robinson Law Office by J. Neil Robinson for Plaintiff.*

> *Hedrick Gardner Kincheloe & Garofalo LLP by J. Douglas Grimes and Amanda A. Johnson for Defendants.*

Gale, Judge.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

{2}      Plaintiff Safety Test & Equipment Company, Inc. ("Safety Test" or "Plaintiff") and Defendant American Safety Utility Corporation ("ASUC" or "Defendant") are both corporations organized under North Carolina law with principal places of business located in North Carolina. (Compl. ¶¶ 2–3; Answer ¶¶

2–3.) Defendants Charles R. Price, Charles A. Price ("Andy Price" or "Price"), John E. Hamrick ("John Hamrick"), Christopher T. McMahan, and Thomas M. Curry III, all reside in North Carolina and are currently employed by ASUC. John Hamrick's brother, Lindsay Hamrick ("Hamrick"), is the national sales manager for Safety Test. (Lindsay Hamrick Aff. ¶¶ 1–2.)

{3}     ASUC competes directly with Safety Test in the sale and testing of electrical utility tools and equipment. (Compl. ¶ 39; Answer ¶ 39.)

{4}     Safety Test initiated this lawsuit on June 12, 2013. The matter was designated a complex business case by Chief Justice Sarah Parker on June 13, 2013, and assigned to the undersigned on June 19, 2013.

{5}     In its Complaint, Plaintiff brought claims alleging misappropriation of trade secrets, defamation, unfair and deceptive trade practices, interference with prospective contractual relations, and civil conspiracy. (Compl. ¶ 1.) Plaintiff subsequently voluntarily dismissed the defamation claim.

{6}     Safety Test now moves this court to compel ASUC to produce two letters that ASUC claims are protected under the attorney-client privilege and further to find that there has been a subject matter waiver with regard to any related documents. Both letters are opinion letters from ASUC's attorney to Andy Price regarding potential legal implications of Defendants' discussions with Hamrick about his potential employment with ASUC.

{7}     The first letter is dated May 15, 2012 ("May 15 Letter"). Hamrick currently possesses a version of the May 15 Letter with the letterhead and the signature line redacted. How and when Hamrick obtained the May 15 Letter is contested. There are multiple competing affidavits on the issue. Hamrick testified that Price voluntarily gave him the letter in redacted form. Price testified that he did not.

{8}     The parties agree that Price and Hamrick first met on or around May 15, 2012, to discuss Hamrick potentially leaving Safety Test to work for ASUC. (Pl.'s Br. Supp. Mot. Compel Produc. Docs. ("Supp. Br.") 2; Defs.' Br. Opp'n Pl.'s Mot. Compel Produc. Docs. ("Opp'n Br.") 2.) Hamrick contends that Price showed

him the May 15 Letter at the first meeting and discussed its contents with him. (Lindsay Hamrick Aff. ¶ 4.) Price disputes this and asserts that he had not yet received the May 15 Letter at the time of the first meeting. (Andy Price Aff. ¶ 5; Third Andy Price Aff. ¶¶ 3–4.) Price and Hamrick met again, at which time Price provided Hamrick with certain documents. (Supp. Br. 2; Opp'n Br. 3.) Price concedes that he had a redacted copy of the May 15 Letter at the second meeting, but denies he gave it to Hamrick. (Andy Price Aff. ¶¶ 8–9.) Plaintiff asserts and Defendants deny that Price voluntarily gave Hamrick the May 15 Letter in its redacted form at the second meeting.

{9} Clearly, Hamrick has the redacted letter. Defendants deny that Price or any other ASUC employee disclosed the May 15 Letter to Hamrick or discussed the May 15 Letter with him in any form or at any point in time. (Opp'n Br. 1; Defs.' Surreply Opp'n Pl.'s Mot. Compel Produc. Docs. ("Surreply") 1.) Safety Test also offered the affidavit of its president, Drew Beam ("Beam"), in which Beam testified that Hamrick gave him the May 15 Letter with an indication that he had received it from Price. (Beam Aff. ¶¶ 2–3.) Defendants maintain that they have no idea how Hamrick could have obtained the letter, and imply that he might have stolen it. (Opp'n Br. 5.) Defendants offer no indication as to how Hamrick could have gained access to the May 15 Letter if Price guarded it carefully as he says he did.

{10} Based on Hamrick's testimony as to a voluntary waiver, Plaintiff seeks both the May 15 Letter in an unredacted form and a second letter, dated July 27, 2012 ("July 27 Letter"), listed on Defendants' privilege log from the same attorney on the same subject matter.

## II.    ANALYSIS

{11} North Carolina law provides that the attorney-client privilege protects communications if

> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was

made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated[,] and (5) the client has not waived the privilege.

*Isom v. Bank of Am., N.A.*, 177 N.C. App. 406, 411, 628 S.E.2d 458, 462 (2006) (quoting *State v. Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981)) (citing *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 32, 541 S.E.2d 782, 791 (2001)).  Plaintiff does not dispute that the letters to ASUC from its attorney meet the first four criteria.  The issue is whether any attorney-client privilege has been waived.  To resolve that issue, the court must determine upon whom the burden of proving waiver falls and whether that burden has been met.

{12}     As a general proposition, the party claiming an attorney-client privilege bears the initial burden of establishing it.  *Evans*, 142 N.C. App. at 32, 541 S.E.2d at 791.  Though the elements of privilege are settled, North Carolina case law has not clearly considered whether the party claiming privilege has an initial burden to prove the negative of a waiver or whether the privilege proponent need only prove absence of waiver in response to an adequately supported challenge.

{13}     A review of federal cases reveals that a burden-shifting approach is "[t]he prevalent, albeit unstated, practice" in the federal courts where issues of potential waiver arise.  2 Paul R. Rice, *Attorney-Client Privilege in the United States*, § 9:22, at 82 (2013–2014 ed. 2013).  Under this burden-shifting approach, courts "impose the initial burden of establishing the basic elements on the privilege proponent."  *Id.*  This initial burden does not require the privilege holder to affirmatively negate waiver.  Rather, once the proponent of the privilege establishes the basic elements of privilege, the burden of production of evidence "shifts to the opponent to establish a prima facie case of waiver."  *Id.*  If the privilege opponent establishes a prima facie case of waiver, "the burden of going forward with evidence shifts back to the proponent to rebut the prima facie case by demonstrating that the privilege is still viable."  *Id.*  Ultimately, the privilege proponent bears the burden of persuasion.  *United States v. Chevron Corp*, No. C 94-1885 SBA, 1996 U.S. Dist.

LEXIS 8646, at *10–11 (N.D. Cal. May 30, 1996); *Shumaker, Loop & Kendrick, LLP v. Zaremba*, 403 B.R. 480, 486 (N.D. Ohio 2009).

{14}    Some courts expressly presume that there has been no waiver until a party opposing privilege demonstrates a factual predicate for claiming waiver. *See, e.g., United States v. Hatfield*, No. 06-CR-0550 (JS), 2009 U.S. Dist. LEXIS 106269, at *10–11 (E.D.N.Y. Nov. 13, 2009) ("If [the privilege proponent] can meet that initial burden, he does not need to go through the burdensome (and borderline impossible) task of showing that he did not waive privilege with respect to each and every document in question.  Instead, the burden shifts to the [privilege opponent] to show [waiver]. . . ."); *Chevron Corp.*, No. C 94-1885 SBA, 1996 U.S. Dist. LEXIS 8646, at *10 (N.D. Cal. May 30, 1996) (noting that the "'shared burden' approach to establishing waiver of the attorney-client privilege alleviates the onerous burden on a client asserting attorney-client privilege to prove a negative, . . . while still placing the ultimate burden of proof on the [proponent]").  Other courts, including the Fourth Circuit, implicitly presume the absence of waiver absent contrary evidence. *See, e.g., United States v. Under Seal (In re Grand Jury Subpoena)*, 341 F.3d 331, 335 (4th Cir. 2003) (stating "[t]he proponent must [initially] establish that . . . the privilege was not waived," but then requiring the opponent to make a prima facie case for waiver before shifting the burden back to the privilege proponent to rebut waiver); *F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 70, 72 (D. Md. 1998) (implying that demonstration of absence of waiver is not required to make a prima facie case for privilege).

{15}    The court concludes that this burden-shifting approach is consistent with North Carolina precedent and should be followed here.  The approach prevents placing an initial heavy and unrealistic burden on the privilege holder to account for and disprove every possibility of waiver. *See* Rice, *supra*, § 9.22, at 80–81 ("The privilege proponent should not be required to discount all possibilities of waiver in order to establish the privilege claim.").

{16}    In applying this approach to this claim, the court need not decide whether showing mere possession by a stranger to the privilege is adequate to shift

the burden of proving the absence of waiver to the privilege holder. Safety Test has put forward substantial evidence on which it asserts a voluntary waiver. Having done so, the burden shifted to Defendants to defeat the claim of waiver.

{17} Each party has submitted facts which it contends support its position. The facts are diametrically opposed. Where the weight of the evidence is equal, the adverse ruling must be against the party with the ultimate burden of proof. Even so, weighing all of the evidence in this particular case, the court concludes that the evidence supports an affirmative finding that Defendants waived the attorney-client privilege. Defendants are then directed to produce an unredacted copy of the May 15 Letter.

{18} The court must then determine whether the waiver extended to the subject matter so as to require production of the July 27 Letter.

{19} This court has recognized that an inadvertent waiver does not lead to a broad subject-matter waiver. *See Morris v. Scenera Research, LLC*, 2011 NCBC LEXIS 34, at *33 (N.C. Super. Ct. Aug. 26, 2011) ("[T]he general rule that a disclosure waives not only the specific communication but also the subject matter of it in other communications is not appropriate in cases of inadvertent disclosure . . . ." (quoting *Parkway Gallery Furniture, Inc. v. Kittinger/Pa. House Grp., Inc.*, 116 F.R.D. 46, 52 (M.D.N.C. 1987))). Considering the overall evidentiary record, the court cannot conclude that waiver as to the May 15 Letter was inadvertent. As such, the waiver further extends to the July 27 Letter, and Defendants must also produce a copy of this letter. The court, however, will not further order that Defendants produce other communications that occurred with their counsel.

## III. CONCLUSION

{20} For the reasons stated above, Plaintiff's Motion to Compel Production of Documents is GRANTED to the extent that Defendants must produce unredacted copies of the May 15 Letter and the July 27 Letter.

IT IS SO ORDERED this 2nd day of September, 2014.